UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| JOHN R. TRIBBLE | CIVIL ACTION NO. 12-0843 |
| VERSUS | JUDGE ROBERT G. JAMES |
| OUACHITA PARISH POLICE JURY | MAG. JUDGE KAREN L. HAYES |

RULING

This lawsuit was brought by Plaintiff John R. Tribble ("Tribble") against Defendant the Ouachita Parish Police Jury ("OPPJ"). Tribble raises various federal and state law claims asserting that he was wrongfully terminated because of his disability.

Pending before the Court is the OPPJ's Motion for Summary Judgment [Doc. No. 15]. For the following reasons, the OPPJ's Motion for Summary Judgment is GRANTED.

I.     BACKGROUND AND PROCEDURAL HISTORY

Tribble was hired by the OPPJ on July 25, 2011, as a computer technician, with the approval of OPPJ Administrator Brad Cammack ("Cammack"). As a new employee, Tribble was subject to a six-month probationary period, during which he could be terminated with or without cause.

Tribble noted that he was disabled during his job interview and on his job application form. Tribble suffers from arthritis, sensitivity to light, anxiety, depression, and neck and back pain resulting from a ruptured intervertebral disc and bulging disc, which were surgically repaired in 1996. Tribble also suffers from pain in his left knee resulting from a torn ACL, which was surgically repaired in 1984.

Shortly after he was hired, Tribble was found asleep on the job on at least two occasions,

on July 27, 2011, and August 8, 2011. Tribble was counseled for the first two violations and received a written reprimand on August 9, 2011. The OPPJ asserts that Tribble was found asleep on two other occasions, but Tribble disputes this.

Tribble also failed to complete numerous job assignments during his four-month tenure, including failing to upgrade software, failing to provide employees access to databases, and failing to properly install a closed circuit camera system. However, Tribble never received a written reprimand regarding his work quality.

Additionally, multiple female OPPJ employees complained to management that Tribble behaved inappropriately around them. One employee reported that Tribble followed her into a conference room and used his cell phone camera to take a photograph of her backside. Cammack and LaTanya Harper ("Harper"), OPPJ's Human Resources Coordinator, met with Tribble about the allegation. Tribble denied taking any photographs and refused to show his phone to Cammack. Following this meeting, Tribble confronted his coworker and told her he could not have his phone out around her and could only say "Hi" or "Bye."

On November 29, 2011, another female coworker, Sonya Abundiz, reported to Harper that as she and another female employee were walking out of the office, Tribble opened the door to enter. The other coworker bumped into Tribble and said, "Excuse me." Tribble let the women walk by, and as Abundiz passed, he whispered to her, "[I] wish it would have been [you]."

Another coworker, Anna Arnold ("Arnold"), reported multiple unwanted contacts and uncomfortable interactions with Tribble, including invitations to lunch and to play tennis, and contacting her via Facebook. Tribble disputes the frequency of these contacts and does not recall contacting Arnold via Facebook.

Tribble also refused to use the general parking lot for employees or his assigned parking space. Instead, Tribble parked in one of the four handicapped parking spaces of the Ouachita Parish Courthouse, near the OPPJ offices. Since he had a handicapped parking tag issued by the State of Louisiana, Tribble believed he was permitted to park there. Cammack, however, asked Tribble not to park in the handicapped spaces, so they could remain open for courthouse visitors. Tribble initially followed Cammack's instructions, but after a few days, he resumed parking in the OPPJ's handicapped spaces, without further discussion with his supervisors. Later, Tribble was assigned a reserved parking space in the employee parking lot, but he continued to park in the handicapped spaces, claiming he did so because his assigned parking space was too distant.

On November 30, 2011, Cammack met with Tribble and asked why he continued to use the handicapped spaces. Tribble responded that his knee was hurting that morning. Cammack again asked Tribble not to park there and offered his reserved parking space to Tribble, which was located immediately adjacent to the handicapped spaces. Tribble refused this offer. The conversation grew heated, and Cammack suspended Tribble and told him to go home. Cammack then had network specialist Joseph Lee Morris, Jr., deactivate Tribble's account. Tribble believed he had been terminated, and, as he was leaving, he told Cammack, "You're going to be sorry."

On December 1, 2011, Cammack drafted a memorandum "recommending the termination of John Tribble for inability to understand and follow instructions, failure to complete assignments in a timely manner, sleeping while on the job, and excessive absenteeism." That recommendation was addressed at the next OPPJ meeting on December 5, 2011.

Following his receipt of Cammack's memorandum, Tribble contacted police juror

Patricia Moore and explained his side of the story, including his belief that he was fired because he used the handicapped spaces. Tribble then appeared at the December 5, 2011 OPPJ meeting and was given an opportunity to speak, though Tribble contends the police jury would not discuss the handicapped parking issue. Cammack spoke next and outlined his reasons for recommending Tribble's termination. Based on these reasons, the police jury unanimously voted to terminate Tribble's employment.

Following his termination, Tribble filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 5, 2011. The EEOC dismissed his charge, stating that it was "unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge."

Tribble then filed this action on April 5, 2012 [Doc. No. 1], and an amended Complaint on June 14, 2012 [Doc. No. 8]. OPPJ filed an Answer on June 15, 2012 [Doc. No. 9]. On February 1, 2013, the OPPJ filed this Motion for Summary Judgment, which Tribble opposed on February 25, 2013 [Doc. No. 22]. On March 12, 2013, OPPJ filed a Reply [Doc. 27].

II.    **LAW AND ANALYSIS**

    A.    **Summary Judgment Standard of Review**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying

portions of the record which highlight the absence of genuine issues of material fact. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012) (citing *Celotex Crop. v. Catrett*, 477 U.S. 317, 323 (1986)). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *ACE Am. Ins. Co*, 699 F.3d at 839. The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

  **B.** **The ADA and L**A**. Rev. Stat. 23:323 Claims**

    **1.** **Discriminatory Termination**

Tribble first raises claims under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Louisiana Employment Discrimination Law ("LEDL"), La. Rev. Stat. 23:323. The Fifth Circuit has held that claims brought under LEDL are analyzed using the same framework and precedent as the ADA claims, leading to the same result. *See Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271, 1274 (5th Cir. 1989); *see also Scott v. Turner Indus. Grp., LLC*, 2011 WL 5023840, *4 (M.D. La. Oct. 19, 2011) ("The ADA and LEDL provide similar rights

and remedies, such that Louisiana courts routinely reference federal ADA jurisprudence when considering LEDL claims.").

Under the ADA, a covered employer "shall [not] discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C).

When an ADA plaintiff relies upon circumstantial evidence, the Court applies the traditional *McDonnell-Douglas* burden-shifting analysis. *See McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000). "Under this framework, a plaintiff must first make a *prima facie* showing of discrimination by establishing that: (1) he is disabled, has a record of disability, or is regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees." *Id.* at 279-80. "Once the plaintiff makes his *prima facie* showing, the burden [of production] . . . shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 280. If the defendant-employer carries its burden of production, "the plaintiff must then offer sufficient

6

evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312-13 (5th Cir. 2004) (citations and internal quotation marks omitted).

Assuming, arguendo, that Tribble established his *prima facie* case,[1] the OPPJ has demonstrated that Tribble was terminated for legitimate, non-discriminatory reasons. The OPPJ cites the multiple job assignments that went uncompleted, Tribble's sleeping at work, and the allegations raised by female coworkers in support of its claim that Tribble was terminated for legitimate, non-discriminatory reasons. In fact, Tribble concedes that some work assignments were not completed, that he slept on the job on at least two occasions, and that multiple coworkers complained about his inappropriate behavior. These facts are sufficient for the OPPJ to carry its burden.

The burden then shifts back to Tribble to show that the OPPJ's proffered excuse is a pretext for discrimination or a motivating factor in its decision to terminate. *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008). A reason is pretextual if it is false, "unworthy of

---

[1] The Court notes that the Fifth Circuit's unpublished opinion in *Johnson v. S. Miss. Home Health* 158 F.3d 584 (5th Cir. 1998), may lead to the conclusion that Tribble has failed to establish his burden of presenting a *prima facie* case. In *Johnson*, the Fifth Circuit affirmed the district court's determination that the plaintiff had failed to show that she was qualified for her position because she "failed to provide any evidence that she was performing her job satisfactorily." *Johnson*, 158 F.3d at 584, *1. Here, Tribble has similarly presented no evidence that he was performing his duties as Computer Technician satisfactorily. He merely states that he was qualified for the job because the OPPJ hired him for the position and because he received only one written reprimand during his four-month tenure. However, because the OPPJ had a legitimate, non-discriminatory reason for terminating Tribble, it is unnecessary to speculate as to the full scope of *Johnson*.

credence," or otherwise unpersuasive. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). Discrimination is a motivating factor if the disability "actually play[ed] a role in the employer's decision making process and [had] a determinative influence on the outcome." *Id.*

Here, Tribble has failed to demonstrate that the legitimate reasons offered were pretextual or that his disability was a motivating factor in the OPPJ's decision to terminate. Cammack's recommendation to the OPPJ does not mention Tribble's use of handicapped parking, and Tribble himself admits that the OPPJ did not discuss the issue of handicapped parking during his termination hearing on December 5, 2011. If the issue of handicapped parking was not discussed during Tribble's termination hearing, it is unclear how it could have played a part in the OPPJ's decision to terminate Tribble, let alone arise to the level of a motivating factor.[2]

Tribble's argues that his use of handicapped parking was discussed during his November 30, 2011 meeting with Cammack, and he was suspended at the conclusion of the meeting. However, Tribble does not deny that he was suspended only after Cammack offered him his own parking space immediately adjacent to the handicapped spaces, and Tribble inexplicably refused the offer. The fact that Tribble and Cammack discussed handicapped parking, and a clear,

---

[2]Although Tribble does not raise the issue, the Court notes that these facts potentially implicate the "cat's paw" doctrine, as articulated by the Supreme Court most recently in *Staub v. Proctor Hosp.*, 131 S.Ct. 1186, 1190 (2011). A "cat's paw case" is one in which an employee seeks to hold his or her "employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." *Id.* A "decisionmaker's exercise of judgment is not always a superseding cause of an adverse employment action if: (1) a subordinate acts with illegal animus intending to cause the adverse action; and (2) the subordinate's acts were a proximate cause of the adverse action." *Okon v. Harris Cnty. Hosp. Dist.*, 426 Fed. App'x. 312, 318 (5th Cir. 2011) (citing *Staub*, 131 S.Ct at 1190). Here, Tribble has not argued that the OPPJ merely rubber-stamped Cammack's recommendation. Instead, Tribble concedes that the OPPJ held its own hearing, allowed Tribble to speak and present witnesses, and never discussed the question of handicapped parking. Thus, the Court concludes that further consideration of "cat's paw" liability is unnecessary.

reasonable accommodation, does not transform his termination by the OPPJ into a discriminatory discharge nor demonstrate that it rises to the level of a motivating factor in the OPPJ's decision.[3]

Thus, even viewing this evidence in the light most favorable to Tribble, the OPPJ has demonstrated the absence of a material issue of fact as to whether the OPPJ terminated Tribble on the basis of his disability. Therefore, the OPPJ's Motion for Summary Judgment as to Tribble's discriminatory termination claims under the ADA and La. R.S. 23:323 is GRANTED.

### 2. Failure to Accommodate

To establish a claim of discrimination for failing to accommodate, Tribble must show that (1) he had a disability; (2) he was qualified for the job; (3) the OPPJ knew of the disability; (4) he requested an accommodation; (5) a reasonable accommodation existed that would have allowed him to perform the essential functions of the job; and (6) the OPPJ failed to provide a reasonable accommodation. 42 U.S.C. § 12112(b)(5)(A); *Riel v. EDS Corp.*, 99 F.3d 678, 683 (5th Cir. 1997). Once an employee makes a request for reasonable accommodations, the employer is obligated by law to engage in an "interactive process" or "a meaningful dialogue with the employee to find the best means of accommodating that disability." *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009) (internal quotation marks and citation omitted).

---

[3] The Court notes that Cammack was responsible for hiring Tribble and knew of his disability at that time, implicating the "same actor inference." Under the same actor inference, there is "a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue." *Spears v. Patterson UTI Drilling Co.*, 337 Fed. App'x. 416, 421–22 (5th Cir. 2009); *see also Ako–Doffou v. Univ. of Tex.*, 71 Fed. App'x. 440, 2003 WL 21417478, at *2 (5th Cir. 2003) ("An inference against a finding of pretext is present where the same actor is responsible for the decision to both hire and fire the complaining employee.").

"When an employer does not engage in a good faith interactive process, that employer violates the ADA." *Id*. However, "an employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) (quoting *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)).

Here, Tribble again fails to establish the required elements of a failure to accommodate claim. Again, assuming, arguendo, that he was qualified for the job, Tribble has not demonstrated that the OPPJ failed to provide a reasonable accommodation. When Tribble first began working at the OPPJ, Cammack asked him to not use the handicapped spaces, so that they would be available to the general public who visit the Courthouse. Tribble did not object and started parking in the employee lot, but then, inexplicably, resumed parking in the handicapped spaces. He did not inform any OPPJ management of this resumption, and, therefore, as the Fifth Circuit has made clear, the OPPJ cannot be found to have violated the ADA when responsibility for the breakdown of the informal, interactive process is traceable to Tribble. Tribble never informed Cammack or any other employee at OPPJ that his assigned parking space was inadequate. When Cammack finally met with Tribble, Cammack offered him another reasonable accommodation, his own assigned parking space, which was immediately adjacent to the handicapped spaces. Tribble refused this offer.

Viewing this evidence in the light most favorable to Tribble, the OPPJ has demonstrated the absence of a material issue of fact as to whether the OPPJ failed to accommodate his disability. Therefore, the OPPJ's Motion for Summary Judgment as to Tribble's failure to accommodate claims is GRANTED.

### C. Discriminatory Termination Claims Under La. Rev. Stat. 51:2232 and 51:2247

Tribble next asserts claims for discriminatory termination under La. Rev. Stat. 51:2232 and 51:2247. Courts in the Fifth Circuit have made clear that "Title 51 of the Louisiana Revised Statutes does not provide a cause of action for disability discrimination or retaliation." *LaCaze v. W.W. Grainger, Inc.*, 2005 WL 1629936, *4 (W.D. La. July 7, 2005) (citing *Smith v. Parish of Wash.*, 318 F. Supp. 2d 366 (E.D. La. 2004). The Louisiana Legislature's 1997 revisions "removed employment discrimination claims from Title 51 in order to consolidate all employment discrimination statutes under Title 23." *Id.* (citing *Smith*, 318 F. Supp. 2d at 373).

Tribble offers the Court no authority supporting his position, and, in fact, admits that he found no such case law. As a result, the Court finds that Tribble has failed to state a claim for discriminatory termination under La. Rev. Stat. 51:2232 or 51:2247. Therefore, the OPPJ's Motion for Summary Judgment as to these claims is GRANTED.

### D. Claims Under La. R.S. 46:1953

Tribble next claims that the OPPJ violated La. R.S. 46:1953, which is part of Louisiana's White Cane Law, La. Rev. Stat. 46:1951, *et seq*. Louisiana's White Cane Law "ensures that all physically disabled people have the same rights as able bodied people to access public spaces, common carriers, educational institutions, places of public accommodation, and housing." *Maddox v. Integro USA, Inc.*, 2012 WL 3862355, *3 (E.D. La. Sept. 5, 2012).

Here, there are no facts to support Tribble's White Cane Law claim. Tribble admits that he was never denied the full and free use of the Ouachita Parish Courthouse or offices. He further admits that he was never denied access to handicap parking, only that he was asked to use

an alternative parking spot. Moreover, Tribble offers no authority to the Court that La. Rev. Stat. 46:1953 applies in the context of employment discrimination. In fact, Tribble offers no authority that discusses La. Rev. Stat. 46:1953 in any context. Viewing this evidence in the light most favorable to Tribble, the OPPJ has demonstrated the absence of a material issue of fact as to whether the OPPJ denied Tribble's access to any public spaces in violation of La. Rev. Stat. 46:1953. Therefore, the OPPJ's Motion for Summary Judgment as to Tribble's claim under La. Rev. Stat. 46:1953 is GRANTED.

### E. Claim Under Louisiana Constitution Article 1, Section 12

Tribble next asserts a state law claim that the OPPJ violated Article 1, § 12 of the Louisiana Constitution. Article 1, § 12 provides that "[i]n access to public areas, accommodations, and facilities, every person shall be free from discrimination based on race, religion, or national ancestry and from arbitrary, capricious, or unreasonable discrimination based on age, sex, or physical condition." The court in *Robertson v. Burger King, Inc.*, 848 F. Supp. 78, 81 (E.D. La. 1994) explained that the term "access" as generally understood means the "ability to enter, to pass to and from, to obtain or make use of." (quoting *Becnel v. City Stores Co.*, 675 F.2d 731, 734 (5th Cir. 1982)).

As stated above, there is no evidence before the Court that the OPPJ denied Tribble access to the Ouachita Parish Courthouse or its offices. In fact, Tribble admits he was never denied access. Tribble's claim under Article 1, § 12, is really a claim for wrongful termination and discrimination based on his alleged disability, which Tribble can bring (and has brought) under the ADA. Thus, the OPPJ's Motion for Summary Judgment as to Tribble's claim under Article 1, § 12 of the Louisiana Constitution is GRANTED.

F.  **Claims Under La. R.S. 23:967**

Finally, Tribble claims that OPPJ violated La. Rev. Stat. 23:967, Louisiana's Whistle Blower statute, which provides:

> A.  An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> (1)  Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>
> (2)  Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>
> (3)  Objects to or refuses to participate in an employment act or practice that is in violation of law.

LA. REV. STAT. § 23:967(A). The statute further states that an employee aggrieved by a practice prohibited by subsection A may bring an action for damages against her employer. See LA. REV. STAT. § 23:967(B).

Tribble concedes that the Whistle Blower statute generally does not apply to employment discrimination cases. However, he argues that it becomes an employment issue if the employer took reprisal against an employee for objecting to the employer's order to violate the public accommodation laws and the Louisiana Constitution's prohibition against disability discrimination. The OPPJ counters that Tribble has failed to establish an actual violation of state law.

"Louisiana appellate courts have repeatedly held that in order to establish a claim under the [Louisiana Whistle Blower Statute], an employee must prove that [his] employer committed

an actual violation of state law." *Johnston v. Ga. Pac., LLC*, 2009 WL2849619, at *4 (M.D. La. Sept. 3, 2009) (citations omitted). Here, as discussed above, Tribble has failed to established that the OPPJ violated any state law. Therefore, the OPPJ's Motion for Summary Judgment on Tribble's whistle blower claim is GRANTED.

### III. CONCLUSION

For the foregoing reasons, the OPPJ's Motion for Summary Judgment [Doc. No. 15] is GRANTED, and Tribble's claims against the OPPJ are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 8th day of April, 2013.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE